Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 646 | **DATE** | 1/28/2004 |
| **CASE TITLE** | USA, ex rel Robert C. Thomas vs. John E. Zaruba | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Thomas's 28 U.S.C. § 2254 motion is denied with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JAN 29 2004 date docketed | 38 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 1/28/2004 date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>ROBERT C. THOMAS,<br><br>　　　　　Petitioner,<br><br>　　　　　v.<br><br>JOHN E. ZARUBA, Sheriff of DuPage County, Illinois,<br><br>　　　　　Respondent,<br><br>　　　　　and<br><br>ATTORNEY GENERAL OF THE STATE OF ILLINOIS,<br><br>　　　　　Respondent. | No. 01 C 646<br><br>Judge Rebecca R. Pallmeyer<br><br>DOCKETED<br>JAN 2 9 2004 |

## MEMORANDUM OPINION AND ORDER

In May 1998, Petitioner, Robert C. Thomas ("Thomas") was convicted in Illinois state court for driving with a revoked driver's license and sentenced to two years' probation. On January 30, 2001, he petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction. The Respondent in this case is John E. Zaruba, the Sheriff of DuPage County. In an earlier order, the court dismissed Thomas's case on the ground that because his 24-month term of probation had expired in mid-2000, he was not in custody when he filed his habeas petition, a requirement under the habeas statute. 28 U.S.C. § 2254. *Thomas v. Zaruba*, No. 01 C 646, Minute Order of January 1, 2002. Thomas applied to our Court of Appeals for a certificate of appealability. He argued that he remained on probation in January 2001 because back in July 1998, the state had petitioned to revoke his probation due to another driving offense.

In a brief order, the Seventh Circuit noted that Thomas was "correct that his term of probation was tolled until the disposition of the state's petition to revoke." *Thomas v. Zaruba*, No. 01 C 646, 7th Cir. Order of April 22, 2002, citing 730 ILCS 5/5-6-4; *People v. Ryan*, 669 N.E.2d

623, 626 (2nd Dist. 1996). Noting that the record did not reflect the status of the revocation petition, the Seventh Circuit granted the certificate of appealability request, vacated this court's earlier order, and remanded with directions for this court to "(1) determine whether Mr. Thomas was 'in custody' when he filed his § 2254 petition because the term of his probation was tolled, and (2) if so, make a determination as to the claims Mr. Thomas identified in his [certificate of appealability] application in this court." *Id.* In July 2002 the court held an evidentiary hearing on the issue of Thomas's status on January 30, 2001. Once again, the court concludes that Thomas was not in custody for purposes of habeas corpus when he filed his petition.

## FACTUAL BACKGROUND

On May 28, 1995, Thomas was indicted in DuPage County for the felony of Driving While License Revoked, an offense he committed on December 14, 1994. Almost three years after the indictment, the case went to trial on May 5, 1998 in Judge Ann Jorgenson's courtroom and a jury found Thomas guilty. He was sentenced on June 30, 1998 to thirty days work release, a $3,000 fine, and two years of probation. (Petitioner's Brief to the Illinois Appellate Court (hereinafter "App. Brief"), Ex. 8 to Petitioner's Memorandum of Points and Authorities, at 10-11.)

Under the terms of his probation, Thomas was required to obey all state, federal and local laws; immediately notify his probation officer if arrested; report to his probation officer as frequently as directed; permit his probation officer to visit him in his home or elsewhere, and be cooperative and truthful with his probation officer; inform his probation officer in writing, within seven days, of any change in employment or place of residence; obtain written permission from his probation officer to leave the State of Illinois; appear before the court in person as directed by his probation officer or the court; work at a lawful occupation and support his dependents; refrain from possessing firearms or other dangerous weapons; pay a probation fee of $25.00 per month; pay all fines, costs, fees, penalties and restitution in full not less than sixty days before the end of

probation in equal monthly installments; undergo random urinalysis; promptly undertake evaluations as determined appropriate by the probation department and thereafter complete therapy, counseling, or other treatment as ordered by the probation department; complete 100 hours of public service as arranged through the Probation Department; and make a final report to the court on June 29, 2000. (Conditions of Probation, Ex. 1 to Thomas's Brief on the Status of Petition to Revoke Probation, hereinafter "Conditions of Probation.")

On June 30, 1998, the same day of his sentencing for the 1995 offense, Thomas was again stopped for driving with a revoked license. Based on this arrest, as well as Thomas' failure to report for periodic imprisonment, and a failure to surrender to work release, on July 16, 1998, the state filed a petition to revoke his probation. The state filed a supplemental petition on September 3, 1998, alleging that Thomas had reported for work release with alcohol on his breath and had refused to provide breath samples. On June 29, 2000, the state filed a third petition to revoke Thomas' probation, this time citing his failure to perform court-ordered community service. (Testimony of Assistant State's Attorney David Johnston (hereinafter "Johnston Testimony") at Evidentiary Hearing of July 11, 2002.)

More than three years passed before the trial court heard arguments regarding the state's first petition to revoke Thomas's probation. In the meantime, on August 4, 1998, Judge Jorgenson issued an order, pursuant to a motion filed by Thomas, stating that Thomas was to begin serving his sentence of 30 days periodic imprisonment that day, and continuing the petition to revoke for a hearing on September 17, 1998. (Copy of Court Order of August 4, 1998, Submitted by Respondent During July 11, 2002 Hearing.) During this court's July 2002 hearing, Respondent presented evidence of numerous further continuances granted by Judge Jorgenson in the matter of the petition to revoke Thomas's probation: Specifically, the court entered orders continuing the matter on September 23, 1998; October 29, 1998; December 3, 1998; December 16, 1998, March 4, 1999; January 27, 2000; February 1, 2000, February 7, 2000; February 28, 2000; April 10,

3

2000; April 28, 2000; October 24, 2000, December 12, 2000; and December 20, 2000. Thomas himself sought the March 4, 1999 continuance, and every continuance granted after February 2000. (Johnston Testimony; Copies of Orders Submitted by Respondent on July 11, 2002; Thomas's Brief submitted to the Appellate Court of Illinois (date unknown), at 12, Thomas's Ex. 8.) The record shows, further, that the court granted several extensions of the hearing date beyond February 27, 2001, all but one of which were granted pursuant to motions filed by Thomas. (Johnston Testimony.) At the July 2002 hearing before this court, Thomas argued that the orders issued by Judge Jorgenson alone were not sufficient by themselves to explain the causes for the delays in the case or to identify which party was responsible for the delays. This court granted leave to file transcripts of the proceedings before Judge Jorgenson, but Thomas has to date not done so.

The hearing on the petition to revoke Thomas's probation was finally held on October 26, 2001. (Johnston Testimony.) Assistant State's Attorney David Johnston elected to proceed only on the first petition to revoke, the one filed on July 16, 1998, based on Thomas's arrest for driving with a revoked license, his failure to report for periodic imprisonment, and his failure to surrender for work release. Johnston explained that, in his view, the evidence that Thomas arrived intoxicated for work release (the basis for the September 3, 1999 petition) was not reliable. Johnston intended to use the third petition to revoke based on Thomas's failure to comply with his public service requirement (the June 29, 2000 petition) at Thomas's sentencing, if the court granted the July 1998 petition to revoke, as Johnston assumed it would. (Johnston Testimony.) In fact, the court did find Thomas to be in violation of his probation and set his sentencing for December 13, 2001. (*Id.*) This court is unaware whether Thomas's sentencing has yet taken place. Thomas filed at least six motions to continue that sentencing date, and according to the most recent order this court has seen, the date for sentencing was set for September 6, 2002. (*Id.*) On January 22, 2002, Johnston was transferred to another courtroom and is no longer assigned

4

to Thomas's case. The court has no information about the state's intentions with regard to Thomas's revocation of probation, but Johnston declared if he did retain control over the matter, he would recommend sentencing Thomas to the Department of Corrections. (Johnston Testimony.)

Regarding Thomas's status on January 30, 2001, Johnston testified that until a court order is signed releasing an individual from probation, that individual remains on probation. (Johnston Testimony.) Johnston acknowledged that, to his knowledge, Thomas was never released from probation by the court, and therefore Johnston believed that he was probably on probation in January 2001. (Id.)

Two other witnesses appeared at the July 11, 2002 hearing, both of whom were called by the Respondent: Thomas's probation officer of two years, John Mains, and Thomas's probation officer in charge of his community service requirements, Heather McCurry. Mains testified that he took over Thomas's case file in June or July 2000. At that time, Thomas was required to report to the probation office once per month, and was subject to "the statutory requirements of probation."[1] (Mains Testimony.) Mains also testified, however, that during a court date in November 2000, Judge Jorgenson asked Mains whether he thought it would be beneficial for Thomas to continue reporting to him, and Mains replied that "he didn't feel it was at issue." (Id.) Judge Jorgenson indicated that if it was not fruitful, Thomas need not continue reporting to Mains. Shortly after Judge Jorgenson's decision, Mains orally informed Thomas that he no longer needed to report to him. (Id.) From November 2000 until approximately January 2002, when Thomas called Mains regarding Thomas's travel plans, Mains did not speak to Thomas, nor did he supervise or impose any restrictions on Thomas's behavior. (Id.) Mains nevertheless testified that in his view, Thomas remained subject to the conditions of probation, though he did not describe how, if at all, those

---

[1] The court presumes these are the same requirements as listed on Thomas's notice of probation discussed *supra*.

5

conditions were enforced.

On one occasion when this court was scheduling a court date in this matter, Thomas informed the court that he would be out of town from November 22 through December 7, 2001. (Transcript of Proceedings, Case No. 01 C 646, November 20, 2001.) When the court asked Thomas where he was going, he replied that he had plans to vacation in Italy. (*Id.*)

Mains testified that about six months before the July 2002 hearing (in approximately January 2002), he spoke to Thomas on the phone about a trip Thomas planned to make to Italy.[2] Mains informed Thomas that he was not in a position to grant him allowance to travel abroad, and that Thomas needed to obtain court permission because of the pending petition to revoke his probation.[3] (Mains Testimony.) Mains was unaware of whether Thomas subsequently asked permission of the court to leave the country, and the two never conversed on the subject again. (Mains Testimony.) Thomas presented no evidence that he ever sought leave of court to travel abroad.

Heather McCurry, Thomas's probation officer for community service, testified that Thomas had failed to complete the required 100 hours of community service to which he was sentenced. (McCurry Testimony.) She noted a report submitted to Judge Jorgenson on June 29, 2000, indicating that Thomas never reported to the work site to which he was originally assigned on July 9, 1998. After being reassigned to a different worksite in June 1999, Thomas failed to report to that site as well, and worked zero of the required 100 hours. Numerous letters were sent and phone calls made to Thomas, but Thomas did not respond. (*Id.*) On June 26, 2000, Thomas went to his worksite and dropped off a paper he had written on the topic of aging, which he apparently

---

[2] The court is unaware if this was the same or a different trip to Italy from the one Thomas apparently took in November and December of 2001.

[3] Mains explained at the hearing that ordinarily a request to travel abroad would be handled by the probation officer, but where a probationer has an outstanding petition to revoke, the court is the sole entity which can grant authority to leave the jurisdiction. (Mains Testimony.)

believed would garner him the necessary credit to satisfy the public service requirement. (*Id.*) McCurry described the worksite as "unique," one where the probation officers tried to cater to Thomas's special skills as an attorney.[4] The paper was not, in fact, approved by the site supervisor, however, and Thomas did not earn any of the credit hours he needed to satisfy the requirements of probation. (*Id.*) According to McCurry's undisputed testimony, Thomas did not make any other attempt to satisfy the required work hours. (*Id.*)

Before filing this habeas petition, Thomas appealed to the Illinois Appellate Court, which affirmed his conviction on November 17, 1999. (Petition for Habeas.) Thomas then petitioned for leave to appeal to the Illinois Supreme Court, which the Court denied on July 5, 2000.[5] (Order of the Supreme Court of Illinois dated July 5, 2000, Ex. E to Record on Appeal to the Court of Appeals for the Seventh Circuit.) Thomas did not seek post-conviction review of his conviction in state court. (Petition for Habeas.)

## DISCUSSION

Pursuant to 28 U.S.C. § 2254(a), this court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." This statute intends "to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

---

[4] This is the extent of the court's knowledge of the worksite to which Thomas was assigned; nor is the court aware of how aging relates to Thomas's legal background.

[5] In his petition for habeas corpus, Thomas notes that his petition for leave to appeal was denied as untimely. (Petition for Habeas.) Neither the Illinois Supreme Court's Order nor the Respondent referred to the timeliness of Thomas's petition, however. Although an untimely petition for leave to appeal would ordinarily lead the court to conclude that a habeas petitioner has procedurally defaulted, because Respondent has not raised the matter, the court will overlook Thomas's admission.

Under the statute, a petitioner must be "in custody" at the time he files his habeas petition. See Spencer v. Kemna, 523 U.S. 1, 7 (1998); Carafas, 391 U.S. at 238. The Supreme Court has observed that a habeas petitioner is not " 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." Maleng v. Cook, 490 U.S. 488, 491 (1989) (per curiam). The "in custody" requirement does not limit the use of habeas petitions to those in physical custody, however. See Jones v. Cunningham, 371 U.S. 236, 242 (1963) (holding that a parolee satisfied the "in custody" requirement); Harts v. Indiana, 732 F.2d 95, 96 (7th Cir. 1984) (probation may be "custody" for habeas corpus purposes); Tinder v. Paula, 725 F.2d 801, 803 (1st Cir. 1984) (same).

Thomas contends that the state's pending petition to revoke his probation renders him "in custody" for purposes of this habeas petition. Under Illinois law, "personal service of a petition for violation of probation shall toll the period of probation and the term of probation shall not run until the hearing and disposition of the petition." 730 ILCS 5/5-6-4(a). It is undisputed that on January 30, 2001, when Thomas filed his habeas petition, the Illinois court had not yet disposed of the state's petition to revoke probation. Therefore, Thomas contends the court must conclude that he was on probation when he filed his habeas petition.

The court does not believe the matter is this simple. Most importantly, when it considered his earlier appeal, our Court of Appeals was unquestionably aware that the state's petition to revoke Thomas's probation was pending in January 2001 when he filed his federal habeas petition. If that fact alone were sufficient, there would have been no reason for the Seventh Circuit to direct this court to determine whether Thomas was "in custody" when he filed his § 2254 petition. This court's understanding of the remand order is that the Court of Appeals expects this court to make a factual determination concerning Mr. Thomas's status as of January 2001.

In making that determination, the court notes that "[w]hether someone who is not under physical constraint can be considered in custody depends on the amount of restriction placed on

8

his or her individual liberty." *Harts*, 732 F.2d at 96. In *Harts*, the petitioner was convicted by an Indiana state court of refusing to submit to a breathalyzer test in violation of Indiana law. *Id.* He received a sentence consisting of a one-year suspension of his driving privileges. In affirming the dismissal of his habeas petition, the Seventh Circuit noted that his suspension of driving privileges was not a severe enough restraint on liberty to be properly characterized as "custody." *Id.*

In contrast, the Supreme Court held in *Hensley* that the petitioner, who had been released by the state of California on his own recognizance, was in custody. 411 U.S. at 384. In order to be released, the petitioner had agreed in writing to appear in court whenever ordered by the court to do so, and he understood that he faced re-arrest if he failed to appear. Furthermore, the petitioner was aware that any court or magistrate of competent jurisdiction could revoke the order of release and return him to custody or require that he give bail or other assurance of his appearance. *Id.*

Thomas's situation appears to lie somewhere between the petitioners in *Harts* and *Hensley*, but the court concludes that his case bears a closer resemblance to *Harts*. Unlike the petitioner in *Hensley*, Thomas has not convinced the court that he suffered any genuine restraints on his liberty, let alone severe ones, at the time he filed his habeas petition with this court, months after his probation would have expired. There is no evidence that Thomas is being forced to act or refrain from acting in any way. As of November 2000, Thomas was no longer required to report to his probation officer. He was not required to report to any specific individual to allow monitoring of his activities. Although Mains informed him he needed court permission to travel to Italy, there is no evidence in the record that Thomas in fact sought and obtained such permission. To the contrary, Mains testified without contradiction that from November 2000, when Judge Jorgenson gave Mains permission to stop monitoring Thomas's activities, until approximately January 2002, when Thomas

9

called Mains regarding his travel plans, the two never spoke to one another.[6] (Mains Testimony.) The court is unaware of any other monitoring of Thomas's behavior during the period after he filed his habeas corpus petition. There is no evidence that Thomas is restrained from pursuing a given type of employment or from occupying a particular residence, nor does the evidence show that Thomas has been required to submit to any random drug tests or counseling over the past several years, or to pay the $25.00 per month probation fine. (See Conditions of Probation.) Thus, it appears to the court that Thomas does not suffer under any of the hallmarks of custody under probation. In fact, the court is uncertain how Thomas' life was impacted at all while he was on probation.

The court notes, further, that this case is distinguishable from Drollinger v. Milligan, 552 F.2d 1220, 1224 (7th Cir. 1977), a case in which the Seventh Circuit held that a petitioner on probation was "in custody" for the purposes of the habeas corpus statute. In Drollinger, the Seventh Circuit stated that the "terms and conditions" of Plaintiff's probation "place [her] 'in custody' within the meaning of the federal habeas corpus statute", 28 U.S.C. § 2241(c).[7] Id. Among the terms of her probation, Drollinger, who had pleaded guilty on a charge of "uttering a forged instrument", was required to: keep her job unless she received the prior approval of her probation officer to change jobs; remain at her current residence unless her probation officer consented to her changing residences; seek counseling through her probation officer; be in her home between the hours of 8 P.M and 6 A.M.; and communicate with her probation officer and follow the probation officer's instructions and directions regarding the terms of her probation. Id. at 1224.

---

[6] The January 2002 call is itself somewhat suspicious, given that it took place after this court questioned Thomas about the supposed restrictions on his ability to travel.

[7] The Seventh Circuit refers to Drollinger as plaintiff rather than petitioner because she originally challenged certain conditions of her probation as a civil rights action under 42 U.S.C. § 1983. The Seventh Circuit found, however, that plaintiff's constitutional challenge to the terms of her probation had to be pursued as a petition for habeas corpus, not a § 1983 action. Drollinger, 552 F.2d at 1225.

In finding that Drollinger was in custody for the purposes of the habeas statute, the Seventh Circuit relied on the Supreme Court's decision in *Jones v. Cunningham*, 371 U.S. 236 (1963). In *Jones*, the Court held that a parolee was "sufficiently in the custody of his parole board to permit him to proceed under the habeas corpus statute to challenge his conviction for larceny." *Drollinger*, 552 F.2d at 1224, citing *Jones*, 371 U.S. at 243. In *Jones*, the Court stated that despite the fact that petitioner is not in "immediate physical imprisonment, [his parole] imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the . . . Parole Board within the meaning of the habeas corpus statute. . ." *Jones*, 371 U.S. at 243. The court notes that the parole-petitioner in *Jones* was required to: live in a particular location identified by the court and continue working at his job at the time, unless his parole officer approved a change; periodically report to his parole officer; allow the parole officer to visit him at his home or work; and adhere to all conditions of parole or return to prison. *Id.* at 242. Because the Seventh Circuit in *Drollinger* could not discern any "significant difference between the statutes of parole and probation with regard to the question of custody, [it found] that the [plaintiff] . . . satisfied the jurisdictional prerequisite for a habeas corpus action." *Drollinger*, 552 F.2d at 1224 (citations omitted).

The restraints on the freedom of the petitioners in *Jones* and *Drollinger* are substantially different than those confronted by Thomas. First, the court notes that Thomas was informed by the state court that he no longer had to report to a probation officer prior to filing his habeas petition. Indeed, there is no evidence that Petitioner's liberty was limited in any fashion at the time he filed his petition. Accordingly, the court is at a loss to find support for Thomas' argument that his freedom was limited by the simple fact that he was technically on probation at the time he filed his habeas petition.

In this court's view, this case is more closely analogous to *Tinder v. Paula*, 725 F.2d 801 (1st Cir. 1984). In *Tinder*, the Court of Appeals for the First Circuit held that the petitioner was not in

11

custody because although the state had not formally terminated his probation, his period of probation had expired three and one half months prior to his filing the habeas petition, and the state had chosen not to punish him for his blatant failure to pay a fine for three years. *Id.* at 805. The court noted that the petitioner would not become subject to further restraints until his probation was either extended or revoked by the court, at which time a new habeas petition could be filed. *Id.* at 805-06. In Thomas's case, although the state has indicated its intention to revoke his probation, at least since November 2000, there is no evidence that the state has taken any active role in monitoring Thomas's behavior and whereabouts.

In addition to the authority cited above, the court finds that there are substantial policy concerns that support this court's finding that Thomas was not in custody at the time he filed his habeas petition. The court notes, first, that it suspects that Thomas was largely responsible for the fact that the hearing on the state's petition to revoke his probation had not occurred as of January 30, 2001, the date he filed his habeas petition, which resulted in the extension of his probation term. The record indicates that either Thomas or his attorney moved to continue the matter at least seven times between March 1999 and January 2001. Moreover, whatever the merits of the challenge to his underlying conviction, Thomas's own subsequent misconduct is what led the state to petition for the revocation, and Thomas is also responsible for the multiple delays in resolving the matter. Thomas ought not be permitted to use his own misconduct and delays as a way to keep alive his claim that the original prosecution against him violated his constitutional rights. To find otherwise would create a situation whereby an individual who fails to comply with a probationary sentence can maintain the right to challenge the underlying conviction indefinitely, while one who complies fully with the terms of his probation loses that right because his sentence is fully expired. The court believes such a result is unreasonable.

The court views the issues here as akin to those addressed by the Supreme Court in *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394 (2001). In *Coss*, the petitioner challenged

a state sentence he was currently serving on the grounds that the sentence had been enhanced due to a prior conviction. That prior conviction, the petitioner argued, itself violated the Constitution. The Supreme Court concluded that petitioner was indeed "in custody" on the more recent conviction but that federal habeas corpus relief was nevertheless unavailable. Except in narrow circumstances, not presented in *Coss* (or in this case), a state prisoner has no claim to habeas relief when he challenges his current conviction on the ground that it was enhanced based on an allegedly unconstitutional prior conviction, for which the petitioner is no longer in custody.

In *Martin v. Deuth*, 298 F.3d 669 (7th Cir. 2002), the Seventh Circuit followed that reasoning in a case where petitioner had been convicted of reckless driving on three different occasions. His sentence on the first conviction was fully expired, but he sought habeas relief from a sentence imposed later, for driving while his license was suspended. Petitioner contended that the subsequent conviction depended on the first conviction, but the Court of Appeals, citing *Coss*, dismissed his petition. Regardless of whether a later sentence was enhanced due to the earlier conviction, the court concluded, a petitioner may not challenge the constitutional validity of that earlier conviction where the sentence for that earlier conviction has expired without a successful direct or collateral attack. *Id.* at 671-2. The situation before this court is not precisely analogous, but the court notes that the purported continued restrictions on Mr. Thomas's freedom are not a product of his state court conviction; they are a product of wrongdoing he engaged in long after that earlier conviction, for which the state seeks additional penalties. Thus, he is in effect challenging the state's response to his June 1998 arrest, asserting that such response was "enhanced" by the fact that he was on probation for a previous conviction, the one he challenges here as unconstitutional.

In any event, the record is clear that regardless of whether Thomas was technically on probation in January 2001, he certainly did not behave as though he was. From November 2000 until approximately January 2002, Thomas never spoke with his probation officer, Mains. He did not fulfill the requirement of 100 hours of public service. (McCurry Testimony.) He apparently never received

13

anyone's permission before vacationing in Italy. It would be disingenuous to conclude that even though Thomas continuously flouted the terms of his sentence, and perhaps intentionally prolonged the period of his probation by filing so many motions with the court, he was nevertheless "in custody" for the purposes of federal habeas corpus. In fact, the facts of the case make it appear as though there would be nothing for the court to redress if it issued an opinion favorable to Thomas, a necessity under Article III's case or controversy requirement. See Spencer, 523 U.S. at 8. Because Thomas has not identified a restraint on his liberty so pervasive as to warrant federal habeas review, Thomas lacks standing to bring his claim to a federal habeas court.

## CONCLUSION

For the foregoing reasons, Thomas's 28 U.S.C. § 2254 motion is denied with prejudice.

ENTER:

Dated: January 28, 2004

REBECCA R. PALLMEYER
United States District Judge